IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-251-D

| | |
|---|---|
| LUBICA S. FILIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Lubica S. Filip ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 28, 30). Both filed memoranda in support of their respective motions (D.E. 29, 31). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.  BACKGROUND

   A.  Case History

Plaintiff filed an application for DIB on 28 April 2011 alleging the onset of disability on 15 October 2009. Transcript of Proceedings ("Tr.") 22. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 22. On 5 February 2013, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 33-58. The ALJ passed

away prior to issuing a decision in the case and a supplemental hearing was held before a new ALJ on 7 May 2013. Tr. 22, 59-74. The second ALJ issued a decision denying plaintiff's claim on 12 June 2013. Tr. 22-32. Plaintiff timely requested review by the Appeals Council. Tr. 18. The Appeals Council initially denied the request on 18 September 2013 (Tr. 7-11). On 26 September 2013 (Tr. 1-6), the Appeals Council set aside its prior denial and admitted additional evidence (Tr. 560-62), but then again denied review.[1] At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 21 November 2013, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

---

[1] The notice of the second denial gives incorrect dates for the ALJ's decision and the initial denial. *See* Tr. 1.

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 42 years old on the alleged onset date of disability and 46 years old on the date of the hearings. *See* Tr. 30 ¶ 7. The ALJ found that she had at least a high school education (Tr. 30 ¶ 8), and she testified that she also completed two years of college in the United States and obtained a masters' degree in mechanical engineering in Europe (Tr. 38-39). The vocational experts at the hearings testified, collectively, that plaintiff's past relevant work included jobs in the occupations of psychiatric aide, comptroller, tax preparer, human relations clerk, bookkeeper, and payroll clerk. Tr. 54-55, 70.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 15 October 2009, the date of the alleged onset of disability. Tr. 24 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: obesity, a bipolar disorder, carpal tunnel syndrome, and degenerative disc disease. Tr. 24 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings. Tr. 25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of work at the light exertional level.[2] Tr. 18 ¶ 5; *see* 20 C.F.R. § 404.1567(b). The limitations the ALJ imposed were as follows:

---

[2] Title 20, C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> [S]he is limited to occasional crawling, climbing, crouching and kneeling and frequent fine and gross manipulation bilaterally. The claimant is also restricted to simple, repetitive tasks.

Tr. 26 ¶ 5. At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 30 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert at the supplemental hearing and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of records processor, information clerk, and order caller.[3] Tr. 30-31 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 31 ¶ 11.

### D.     Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

---

20 C.F.R. § 404.1567(b); *see also Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http:// www.oalj.dol.gov/libdot htm (last visited 12 Nov. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

[3] The vocational expert at the initial hearing also found that there existed jobs in the national economy in significant numbers that plaintiff could perform, but the hypothetical posed to that expert was less restrictive (*i.e.*, it included no postural limitations) than the corresponding hypothetical posed to the vocational expert at the supplemental hearing, and the jobs identified by the expert at the initial hearing were different from those identified by the expert at the supplemental hearing. *Compare* Tr. 55-56 *with* Tr. 70-71.

5
Case 7:13-cv-00251-D   Document 33   Filed 11/12/14   Page 5 of 15

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the case should be remanded for the award of benefits or, in the alternative, a new hearing, on the principal grounds that the ALJ erred by: (1) improperly finding plaintiff not to be fully credible; (2) improperly assessing her RFC; and (3) failing to make a finding regarding her past relevant work. Each ground is examined in turn below.

## III. DISCUSSION

### A. ALJ's Credibility Assessment

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

As summarized by the ALJ, plaintiff testified to the effect that her physical impairments were disabling:

> The claimant testified at the hearing before [the first ALJ] that she lived in an apartment. She indicated that her friends did her laundry for her. She stated that she had a driver's license, but only drove to her medical appointments. The claimant testified that she weighed 320 pounds at a height of 5'7". She described problems using her hands despite having undergone carpal tunnel surgery in the past. She related that she suffered from joint and back pain. As to her activities of daily living, the claimant testified that she showered on a daily basis. She also reported that [she] watched television and read books. . . .
>
> The claimant testified at the supplemental hearing that the pain in her hands had worsened since her last hearing. . . . She reported that her hand problems made it difficult for her [to] shower or brush her hair. The claimant also described problems holding objects. . . . The claimant stated that she had very few friends, but that one of them did help her with household chores.

Tr. 27 ¶ 5.

The ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 27 ¶ 5. Plaintiff does not, of course, challenge this finding.

At the second step of the credibility assessment, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 27 ¶ 5. The ALJ explained the basis for his credibility determination regarding plaintiff's physical impairments, including her cervical radiculopathy and carpal tunnel syndrome, as follows:

> [T]he medical evidence of record does not fully support the claimant's allegations as to her physical complaints. For instance, it was reported on February 9, 2011, that the claimant was in no acute distress. Her physical examination revealed 2+ peripheral pulses with no peripheral edema, clubbing or cyanosis of her extremities. (Exhibit 1F, page 5) [Feras Tanta, M.D.] performed a consultative examination of the claimant in September 2011 and diagnosed her with degenerative joint disease with bilateral carpal tunnel syndrome and morbid obesity (he reported that the claimant weighed 382 pounds at a height of 5'6" which equated to a body mass index of more than 40); however, he also noted that the claimant was in no acute distress. He described the claimant's gait was within normal limits and indicated that she was able to perform straight leg raising in the supine and seated positions, but that she could not heel or toe walk or perform a full squat. (Exhibit 7F) Moreover, the claimant reported to [psychiatrist David A.

> Joseph, M.D.] in October 2012, that she had no history of disorder of muscle strength or tone, joint problems or disturbances of gait or station. (Exhibit 9F, page 28) The record does reveals that the claimant has a history of treatment of cervical degenerative disc disease. Treatment modalities included epidural steroid injections. (Exhibit 11F pages 4-8 and 36-41) The claimant was also treated for complaints of wrist pain in April 2012 and was diagnosed with bilateral carpal tunnel syndrome; however, it was reported that she maintained 5/5 strength upon thumb opposition/extension and index abduction. (Exhibit 11F, page 10)
>
> . . . .
>
> In addition, despite her multiple impairments, the claimant remains capable of activities of daily living inasmuch as she told [psychological associate Henry F. Tonn, M.S.[4]] during her September 2011 consultative psychological evaluation that she did some cooking and cleaning. (Exhibit 6F) In addition, the claimant told Dr. Joseph in October 2012, that she walked her dogs several times a day. (Exhibit 9F, page 28) She also indicated in February 2012, that she had started exercising by riding her bike. (Exhibit 12F\page 13)

Tr. 27-28 ¶ 5.

Plaintiff argues that the ALJ erred in his credibility determination with respect to plaintiff's carpal tunnel syndrome and cervical radiculopathy impairments. Specifically, she contends, in part, that the ALJ failed to consider a nerve conduction study she underwent on 3 July 2011. (Tr. 390-94). Plaintiff has not demonstrated, though, that the ALJ did not consider this study. While he did not refer to it expressly, an ALJ is not required to discuss every piece of evidence. *See, e.g., Lewis v. Colvin*, No. 7:13–CV–59–D, 2014 WL 4205834, at \*6 (5 Aug. 2014), *mem. & recomm. adopted by* 2014 WL 4205994 (E.D.N.C. 25 Aug. 2014). Moreover, the ALJ repeatedly represented that he considered all the evidence of record. *See* Tr. 22 ("After careful consideration of all the evidence . . . ."); 24 ("After careful consideration of the entire record . . . ."); 26 ¶ 5 ("After careful consideration of the entire record . . . ."); 27 ¶ 5 ("After careful consideration of the evidence . . . ."). Two exhibits to which the ALJ does cite (*see* Tr.

---

[4] The ALJ erroneously refers to Tonn as "Dr. Tonn" (*see* Tr. 28 ¶ 5; 30 ¶ 5), but plaintiff makes no mention of the error, and it is not material to this appeal. Notably, a supervising psychologist co-signed with Tonn the report on Tonn's psychological evaluation of plaintiff. *See* Tr. 414.

29 ¶ 5)—the assessments of the non-examining state agency consultants (Tr. 75-83, 85-98)—summarize the findings from the study (*see* Tr. 77, 89).

In addition, the findings from the nerve conduction study do not, by their terms, show that plaintiff is disabled. They state:

1. Nerve conductions show evidence of mild to moderate bilateral carpal tunnel syndrome.
2. The EMG is suggestive of chronic left C7 and bilateral C8 radiculopathies. There are signs of acute denervation (a few fibrillations) in the left FDI [i.e., first dorsal interosseous] muscle.
3. Clinical correlation is indicated.

Tr. 390.

Plaintiff further contends that the ALJ found her not credible regarding her hand limitations based on having normal pulses, a normal gait, and a negative straight-leg test. Plaintiff apparently refers to the ALJ's description of the findings from February and September 2011 quoted above. *See* Tr. 27-28 ¶ 5. As can be seen, however, the ALJ does not expressly relate these findings to plaintiff's hand impairments. Nevertheless, peripheral pulses could conceivably relate to the functionality of the hands; compromised blood flow to a hand could limit its functionality. While assessment of gait and straight-leg testing obviously do not relate to the hands, as plaintiff asserts, the language at issue cannot reasonably be read as impliedly relating such findings to plaintiff's hands. To the extent that plaintiff argues that the ALJ's credibility determination regarding her radiculopathy also relies on the same findings, such argument is meritless for comparable reasons.

Plaintiff implies that the ALJ's reference to peripheral pulses, gait, and straight-leg tests are the only basis he cites for his determination on plaintiff's credibility with respect to her hands. In fact, though, the ALJ does discuss elsewhere in his credibility analysis evidence relating to his determination regarding plaintiff's hands. Such evidence includes: the findings in

the February 2011 examination that plaintiff was in no acute distress and had "no peripheral edema, clubbing or cyanosis" (Tr. 27 ¶ 5); her report of cooking and cleaning in September 2011 (Tr. 28 ¶ 5); her maintenance of "5/5 strength upon thumb opposition/extension and index abduction" in April 2012 (Tr. 28 ¶ 5); and her report of no history of disorder of muscle strength and walking her dogs several times a day in October 2012 (Tr. 28 ¶ 5).

Plaintiff acknowledges that the ALJ refers expressly to her "history of treatment of cervical disc disease" in his credibility analysis. Tr. 28 ¶ 5. At another point, the ALJ also refers to Dr. Tanta's September 2011 diagnosis of her with degenerative disc disease, ostensibly based on Dr. Tanta's radiculopathy-related findings. Tr. 27 ¶ 5; 417. Thus, it is apparent that the ALJ considered plaintiff's cervical radiculopathy in his credibility determination.

Although plaintiff argues that the ALJ required objective evidence of disabling pain, the ALJ acted properly in evaluating the consistency between the level of pain claimed and the objective findings. The Fourth Circuit has stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig*, 76 F.3d at 595.

The ALJ's credibility determination with respect to plaintiff's hand and cervical impairments finds support in the 22 September 2011 physical RFC assessment of non-examining consulting state agency physician Robert N. Pyle, M.D. Tr. 85-97. He found plaintiff limited to frequent, not constant, manipulation of both hands because of plaintiff's carpal tunnel syndrome. Tr. 92. Dr. Pyle noted plaintiff's cervical impairment, but imposed no postural limitations and found her capable of work at the medium exertional level. Tr. 92, 93.

The ALJ gave these opinions "limited weight." Tr. 29 ¶ 5. While he adopted the same limitation of frequent manipulation based on plaintiff's hand impairments, he explained that he "considered additional evidence received at the hearing level and credited some of the claimant's subjective complaints in reducing her [RFC] to a range of light work." Tr. 29 ¶ 5. In addition, unlike Dr. Pyle, he imposed postural limitations. The reduction in exertional level and imposition of postural limitations are responsive to plaintiff's cervical degenerative disc disease. Thus, the ALJ did not simply disregard plaintiff's allegations, but took them into account in determining her RFC. Plaintiff does not challenge the ALJ's evaluation of Dr. Pyle's opinions.

Other evidence supporting the ALJ's credibility determination regarding plaintiff's hand and cervical impairments includes her responses in a function report form dated 18 May 2011. Tr. 278-87. In it, she reported, as the ALJ stated, "that she cared for her pets, maintained her personal needs without problem, prepared simple meals and did light household chores (Exhibit 3E)." Tr. 25 ¶ 4.

The court concludes that the ALJ's credibility assessment is supported by substantial evidence, including the evidence he cites, and based on proper legal standards. The court therefore rejects plaintiff's challenge to it.

### B. ALJ's RFC Determination

A claimant's RFC signifies the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is to be based on all the relevant evidence of record. *Id.*

Here, as with the ALJ's credibility determination, plaintiff challenges his RFC determination on the grounds that he did not properly evaluate plaintiff's carpal tunnel syndrome

and cervical radiculopathy. The ALJ's summary of the considerations underlying his RFC determination make clear that he did properly evaluate these impairments:

> I considered the claimant's combination of physical impairments (obesity, carpal tunnel syndrome and degenerative disc disease) by limiting her to the performance of light work with occasional crawling, climbing, crouching and kneeling. I also specifically considered the claimant's carpal tunnel syndrome by limiting her to the frequent fine and gross manipulation bilaterally. Medical evidence of record supporting such conclusion includes the . . . consultative examination report from Dr. Tanta dated September 2011 in which he indicated that the claimant's physical examination revealed good muscle bulk and tone with 5/5 strength throughout. He also noted that the claimant had normal range of motion of her musculoskeletal system except in the left shoulder and left wrist. He stated that the claimant had 2+ and symmetric deep tendon reflexes. Dr. Tanta further indicated that the claimant had non-pitting edema of her lower extremities with intact pulse and no stasis changes. (Exhibit 7F) In addition, a November 2012 treatment note indicates that the claimant's physical examination revealed her gait to be normal without use of any assistive device. She had active range of motion in all joints with 4/5 muscle strength throughout. The claimant [w]as unable to move her fingers rapidly due to stiffness and sores in the joints, but had no erythema or nodes to her finger/hand joints. (Exhibit 9F, page 24) On April 4, 2013, a nurse practitioner with Coastal Horizons reported that the claimant's gait was normal without use of any assistive devices and that she had 4/5 muscle strength throughout. Her range of motion was limited in all extremities due to pain and she had paravertebral tenderness along the cervical and lumbar spine, but she had no cyanosis, clubbing or edema to her extremities. (Exhibit 13F, page 5)

Tr. 29 ¶ 5. The ALJ's analysis is supported by substantial evidence, including the evidence he cites, the evidence of plaintiff's activities of daily living, and the opinions of the consulting non-examining physician already discussed, among other evidence.

Plaintiff complains that the ALJ does not cite to substantial evidence supporting his finding that she could use her hands consistently at the workplace. In fact, though, the evidence that plaintiff's hand impairments are not disabling constitutes evidence that she can use her hands with sufficient consistency to perform work. After all, it is plaintiff's burden to show that she is disabled. The ALJ did not err in finding that she did not meet this burden based on the considerations already discussed.

The court concludes that the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. The court therefore rejects plaintiff's challenge to it.

### C. ALJ's Past Relevant Work Determination

Plaintiff contends that the ALJ erred by purportedly making no finding regarding plaintiff's past relevant work. Contrary to plaintiff's contention, the ALJ did make such a finding, twice. He stated: "The claimant is unable to perform any past relevant work (20 CFR 404.1565)," and "[T]he claimant is unable to perform past relevant work." Tr. 30 ¶ 6. It is true that the ALJ neglected to identify the past relevant work plaintiff had, starting but not finishing a sentence in which that information was apparently to be set out.[5] Tr. 30 ¶ 6 ("The claimant has past relevant work as a Accordingly, the claimant is unable to perform past relevant work.").

The omission of a specification of plaintiff's past relevant work is harmless because the ALJ did make the determination that she could not perform it. He therefore proceeded to make an alternative finding at step five of the sequential analysis, notwithstanding his omission. *Schartiger v. Colvin,* No. 5:13CV71, 2014 WL 1054241, at *37, *rep. & recomm. adopted by* 2014 WL 1054241, at *4 (N.D. W. Va. 18 Mar. 2014); *Clark v. Colvin*, No. 2:13cv83, 2014 WL 129228, at *8 (27 Nov. 2013) (finding any step four error harmless where alternative finding made at step five), *rep. & recomm. adopted by* 2014 WL 129228, at *1 (E.D. Va. 14 Jan. 2014). The court accordingly rejects as baseless plaintiff's challenge to the ALJ's determination regarding her past relevant work.

---

[5] At the hearings, plaintiff and the vocational experts, in response to questioning by the ALJ, testified regarding plaintiff's past work. *See* Tr., *e.g.*, 41, 42, 54-55, 70.

## IV.     CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 30) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 28) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 26 November 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  Any response to objections shall be filed within 14 days after filing of the objections on the responding party.

This, the 12th day of November 2014.

_____
James E. Gates
United States Magistrate Judge